JOHN WOOD, JR., *vs.* ST. PAUL CITY RAILWAY COMPANY, impleaded, etc.

PERCIVAL ROBERTS *vs.* SAME.

ROBERT ALLISON and others *vs.* SAME.

January 29, 1890.

**Affidavits before Notaries in Other States.**—Whether the authority of notaries public to administer oaths be of statutory origin, or founded on customary law, it is now universal, and should be judicially recognized as one of their general powers, and affidavits, authenticated by the official seals of notaries of other states, placed on the same footing as their authentications of commercial documents.

**Same — Affidavit to Mechanic's Lien-Statement.**—An affidavit to a statement of account for a mechanic's lien, under Gen. St. c. 90, sworn to before a notary in another state, and authenticated by his official seal, is sufficient.

Each of these actions was brought in the district court for Ramsey county, to enforce a lien on a cable street railway of defendant, for material furnished to the New York Cable Railway Construction Co., the contractor by which the railway was built. The first of the ac-

tions was tried by *Vilas*, J., who ordered judgment, establishing a lien for $1,023.19 and interest. After his decease, a new trial was denied by *Brill*, J. The second and third cases were tried by *Brill*, J., who ordered like judgments, viz., for $4,419.36 and interest in the second case, and for $7,630.76 and interest in the third case, and in each case refused a new trial. The railway company appeals from each of the orders refusing a new trial. At the trial, in each case, the lien statement offered in evidence by plaintiff was sworn to before a notary public in Philadelphia, and affixed to his signature to the jurat was his title, "Notary Public," and what purported to be his notarial seal. No proof was offered of the genuineness of the signature or seal, or that the person signing the jurat was a notary, or that, if a notary, he was authorized to administer oaths. In each case the statement was admitted against defendant's objection, and an exception was duly taken.

*H. J. Horn*, for appellant in each case.

*Rogers, Hadley & Selmes*, for respondents in first and second cases.

*John B. & W. H. Sanborn*, for respondents in third case.

MITCHELL, J. Gen. St. 1878, c. 90, §§ 6, 7, (relating to mechanics' liens,) provide that the statement of the account, required to be filed and recorded, shall be verified by the oath of the party or his agent, but is entirely silent as to where or before whom such affidavits shall be made. To hold that the statute requires them to be made within the state, or, if without the state, that the oath must be administered by a commissioner for the state of Minnesota, would be to put a construction upon the act at once unauthorized by its language, and unsuited to the business habits and necessities of the country. Nothing short of express legislation would justify any such rule. We think these affidavits may be made in another state, before any officer authorized by the laws of such state to administer oaths. Of course, if taken in another state, they must be duly authenticated, so as to show on their face the official character of the officer, as well as his authority to administer oaths. In each of the present cases the affidavit was sworn to in Pennsylvania before a notary public of that state, who authenticated it by signing the jurat, and affixing his notarial seal. If, instead of being affidavits, these had been certifi-

cates of protest or authentications of similar commercial documents, it is elementary law that the notary's seal would prove itself, without any further proof of his official character or of his authority to do the act. A notary public is considered not merely an officer of the country where he is admitted or appointed, but as a kind of international officer, whose official acts, performed in the state for which he is appointed, are recognized as authoritative the world over. Defendant's counsel concedes that this is true as to all his acts in the way of the authentication of what he terms commercial documents, but insists that, outside of such matters, a notary has no power, in the absence of statutory authority, to administer oaths. Although this is sometimes stated in the books as being the law, yet its correctness may well be doubted. The powers of a notary, which is a very ancient office, are largely founded on customary law. The English notaries have always considered themselves authorized to administer oaths, and whatever chance for doubt about it there might have been, was set at rest by the act of 5 & 6 Wm. IV. *c.* 62, § 15. Brooke, Not. 20. Affidavits taken before notaries in foreign countries have uniformly been received by the courts of England in judicial proceedings, without any other proof of their official character or their authority to administer oaths than their notarial seals. *Omealy* v. *Newell,* 8 East, 364; *Walrond* v. *Van Moses,* 8 Mod. 321; *Haggitt* v. *Iniff,* 5 De Gex, M. & G. 910; *Cole* v. *Sherard,* 11 Exch. 482. It was said in *Omealy* v. *Newell, supra,* that this had been the uniform practice "as far back as living memory could trace it." The same practice seems to have obtained in the American courts. *U. S.* v. *Libby,* 1 Woodb. & M. 221; *Denmead* v. *Maack,* 2 McArthur, 475; *Tucker* v. *Ladd,* 4 Cow. 47; *Conolly* v. *Riley,* 25 Md. 402. This practice has also long prevailed in this state, especially in the probate courts and in the proof of claims in insolvency proceedings. It is true, as counsel suggests, that these are rules of practice, as to which the courts are to some extent a law unto themselves; but the fact is important and in point as a recognition, not only of the regularity of affidavits sworn to outside the state, but also of the general power of notaries to administer oaths without proof of statutory authority to do so. As a matter of fact, in every state and territory in

the Union notaries have power to administer.oaths, and for the last 40 years affidavits sworn to before a notary in any state of the Union, and authenticated by his notarial seal, have been admissible in all the federal courts, without any proof of their authority to administer oaths.    It is true that perhaps in every state the powers of notaries, including that of administering oaths, have been regulated by statutes, which, however, are largely declaratory in their nature.    But whether this authority be of statutory origin, or founded on customary law, the recognition of its existence has become so general, if not universal, that there is now no good reason why it should not be judicially recognized as one of the general powers of notaries, and affidavits authenticated by seals of notaries of other states placed on precisely the same footing as their certificates of protest or authentications of so-called commercial documents.

Some other objections are raised to these affidavits, but none of them are, in our judgment, substantial.    The order appealed from is, in each case, affirmed.